E. S. Funsten v. Commissioner.
Funsten v. Commissioner
Docket No. 1228.
United States Tax Court
1944 Tax Ct. Memo LEXIS 234; 3 T.C.M. (CCH) 499; T.C.M. (RIA) 44178; May 27, 1944
*234 Stanley S. Waite, Esq., and H. M. Stolar, Esq., 408 Pine St., St. Louis, Mo., for the petitioner. W. Frank Gibbs, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in petitioner's income tax for the years 1938, 1939, 1940 and 1941, in the amounts of $20,074.98, $28,288.30, $35,369.35 and $23,200.57, respectively, as the result of including in petitioner's taxable income for those years the income of three trusts created by petitioner in 1931 and 1932 for the benefit of his wife and three children. Findings of Fact Petitioner is an individual residing in St. Louis, Missouri, and his income tax returns for 1938, 1939, 1940 and 1941 were filed with the collector of internal revenue at St. Louis. The facts have been stipulated, and are essentially as follows: On June 30, 1931, petitioner, as grantor, executed three trust indentures, the first for the benefit of his wife and his son, Edward S. Funsten, Jr.; the second for the benefit of his wife and his daughter, Elizabeth; and the third for the benefit of his wife and his child or children then "en ventre sa mere". The provisions of the three trusts were in all important *235 respects identical, and the quotations from one trust instrument hereinafter used will be representative of the other two except for the difference in the names of the beneficiaries. In each case, petitioner transferred to himself, as trustee (with his wife and the St. Louis Union Trust Company named as successor trustees) twenty shares of stock of the R. E. Funsten Company, of which petitioner was a stockholder, director and vice-president. Petitioner later made additional gifts of this stock totaling 14 shares to each trust, so that each trust thereafter held 34 shares of the stock. All of the stock which was the subject of the gifts was immediately registered in the name of the petitioner, as trustee. Before the execution of the trusts in question petitioner owned 183 shares of the stock of the R. E. Funsten Co. out of a total of 750 shares then outstanding. The trustee was given the following powers with respect to the property of the trusts: "A. To retain such property as an investment without regard to the proportion such property or property of a similar character, so held, may bear to the entire amount of the trust estate. "B. To sell such property at either public or *236 private sale for cash or on credit; to exchange such property, and to grant options for the purchase thereof. "C. To invest and reinvest in any property, including but not by way of limitation, bonds, notes, debentures, mortgages, certificates of deposit, common and preferred stocks, and shares or interests in investment trusts, without being limited to the class of securities in which Trustees are authorized by law or any rule of court to invest trust funds. "D. To consent to and participate in any plan of reorganization, consolidation, merger, combination, or other similar plan, and to consent to any contract, lease, mortgage, purchase, sale or other action by any corporation pursuant to such plan. "E. To deposit any such property with any protective, reorganization or similar committee, to delegate discretionary power thereto, and to any part of its expenses and compensation and any assessments levied with respect to such property. "F. To exercise all conversion, subscription, voting and other rights of whatsoever nature pertaining to any such property, and to grant proxies, discretionary or otherwise, in respect thereof. "G. To do all such acts, take all such proceedings, *237 and exercise all such rights and privileges, although not hereinbefore specifically mentioned, with relation to such property as if the absolute owner thereof and in connection therewith to enter into any covenants or agreements binding the trust estate." The second section of each trust instrument provided in part as follows: "SECOND: The Trustee shall, during the lifetime of the Grantor, accumulate the net income derived from the trust estate and keep the same in a separate account, which shall become a part of the principal account upon the death of the Grantor; provided that this accumulated net income account shall not be subject to revocation by the Grantor under the terms of Section SIXTH hereof, but shall be held for the sole benefit of the Grantor's wife, Gladys M. Funsten, and son, Robert Lee Funsten, and such amounts out of the net income as the Trustee may in writing direct shall be paid over to the Grantor's said wife and son. One-fourth (1/4) of this accumulated net income account, upon the death of the Grantor, shall become a part of the principal of the trust estate held for the benefit of the Grantor's said wife, and the remaining three-fourths (3/4) thereof, upon *238 the death of the Grantor, shall become a part of the prinicipal of the trust estate held for the benefit of the Grantor's said son." After the grantor's death, further disposition of the trust property to the wife and child was provided for, the details of which are not important to this decision. So long as the trust should continue after his death and the corpus by the successor trustee the entire net income was payable to the beneficiary. Section six of each instrument provided as follows: "SIXTH: The Grantor reserves the right, from time to time, by an instrument in writing delivered to the Trustee, acknowledged like a conveyance of real property entitled to record in Missouri, unless acknowledgment be waived by the Trustee, to change or modify any of the administrative provisions of this agreement, and to change any beneficial interest hereunder; provided, however, that except upon the conditions hereinafter set forth the Grantor shall not have the power at any time during any taxable year within the meaning of the revenue laws of the United States to revoke this trust or to revest in himself title to any part of the corpus of the trust; and provided further, that no part *239 of the income of the trust shall be distributed to the Grantor or be held or accumulated for further distribution to the Grantor; and provided still further that no part of the income of the trust may be applied by the Trustee to the payment of premiums upon policies of insurance on the Grantor's life. At any time upon the written consent delivered to the Trustee of the beneficiary or beneficiaries other than the Grantor currently entitled to the distributable income of the trust or of such share or shares thereof as may be affected thereby, the Grantor shall have full power by such instrument so acknowledged and delivered to amend or revoke this trust in whole or in part, and to revest in himself title to any part of the corpus thereof; or upon the condition that if the Grantor be living during the month of December in any taxable year and delivered to the Trustee during such month a written notice that it is the Grantor's desire to have such power during any specified period of time after the first day of the next succeeding taxable year, then during such specified period of time, if the Grantor be then living, but neither prior nor, except upon similar notice, subsequent thereto, *240 the Grantor shall have full power by such instrument so acknowledged and delivered to amend or revoke, this trust in whole or in part, and to revest in himself title to any part of the corpus thereof." On December 24, 1931, the same year in which the trusts were established, petitioner executed an instrument which he attached to the trust indentures for the benefit of his son, Edward, and his daughter, Elizabeth, containing the following language: "Whereas I, Edward S. Funsten, did on the 30th day of June, 1931, execute a certain Trust Indenture in which I am named as first Trustee and Trust created for my wife, Gladys M. Funsten, and my son, Edward S. Funsten, Jr., and according to the terms I reserved the right to alter, amend or revoke its terms at such time and in such manner as I may desire, I therefore hereby declare and gave the 20 shares of stock in the R. E. Funsten Company Certificate No. 62 heretofore known and used as principal under this Indenture to hereafter to become Part and Parcel oft his Indenture under the terms as to income and therefore irrevocable at any future date by me. "In testimony thereof I set my hand and seal this 24th day of December 1931." On January *241 14, 1932, petitioner revoked the trust which he had created before the birth of his second son, Robert, in accordance with his reserved power to revoke, and executed a new trust naming his wife and Robert as Beneficiaries, which was in all respects similar to the other two trusts. On the same day, January 14, 1932, petitioner executed the following instrument and attached it to the indenture creating the new trust for Robert: "Whereas I Edward S. Funsten did on the 30th day of June 1931 execute a certain trust Indenture revoking same on January 14th 1932 and executing another Trust Indenture the same date in which I am named as first Trustee and Trust created for my wife Gladys M. Funsten and my child or children then en ventre sa mere in first trust and namely Robert Lee Funsten in second Trust in which I reserved the right to alter amend or revoke its terms I hereby revoke the 20 shares of stock in the R. E. Funsten Co. Certif No. 63 heretofore known and used as Principal. "After due deliberation I give outright stock above mentioned to become part of Income Account of Trust dated January 14th mentioned above and under terms of same therefore becomes irrevocable. "In testimony *242 thereof I set my hand and seal this fourteenth of January 1932." On March 17, 1932, petitioner transferred to each of the three trusts an additional ten shares of stock in R. E. Funsten Company, evidenced by the following writing attached to each instrument: "I Edward S. Funsten hereby give ten shares of stock in the R. E. Funsten Company certificate number 68 this 17th day of March 1932 same to become Part and Parcel of this Indenture dated June 30th 1931 under the terms as Income and therefore irrevocable." On October 10, 1934, petitioner transferred to each trust two more shares of stock in R. E. Funsten Co., and executed the following writing, which he attached to each trust instrument: "I have this day given to my wife, Gladys M. Funsten, and child, Edward S. Funsten, Jr., two (2) shares of stock in the R. E. Funsten Company, Certificate No. 82, same to become part of Trust Agreement for them dated June 30th, 1931, to be under the terms pertaining to Income and therefore irrevocable, same as the other thirty (30) shares held in this Trust. "This 10th day of October, 1934." Opinion KERN, Judge: The respondent relies on the doctrine of , *243 to justify taxing the income of the trusts involved here to the petitioner under section 22 (a). It is clear that these trusts bear some of the earmarks of a Clifford trust. We have here the intimate family relationship; the grantor acting as trustee with powers of management of the trust estate about as broad as could be devised; and a power in the grantor-trustee to pay over to the beneficiaries, or to accumulate, the net income of the trusts, in his sole discretion. In addition, though these are less clearly expressed, and their existence is not recognized by petitioner, we think there is also the power to change the beneficial interests at least as between the two named beneficiaries and to amend the administrative provisions of the trust indenture. Petitioner argues that he intended to surrender the last two powers when he gave up the power to revoke and revest in himself, individually, title to the corpus. But we can find no intimation to that effect in the language which he used, then or later. It is unquestioned by the respondent that he did give up his power to revoke the trust, but nowhere do we find any expression which substantiates petitioner's present contention *244 that he meant also to deprive himself of the power to change the beneficial interests, or the administrative provisions. Petitioner argues that if he be held not to have relinquished his right to change the beneficial interests, reserved in Section 6 of the trust instrument, that right related only to the corpus, and, if not, that it must be held ineffective in the face of the specific grants, under Section 2 of those interests, one-fourth for the benefit of his wife, and three-fourths for the son. We do not construe these provisions of Section 6 to apply only to corpus. The right to revoke and revest is limited to the corpus, but the entire section does not seem to be so restricted, and specifically the rights to change the beneficial interests and the administrative provisions are not limited to the corpus. Nor can we agree that the specific grants in Section 2 affect in any way the general powers reserved in Section 6 which are applicable to the income fund. If this theory were valid, the right to revoke or to change beneficiaries in most instances would be meaningless, since virtually all instruments containing such reservations of power make express gifts to specific beneficiaries *245 by other terms. On the contrary, such specific gifts must be always subject to the reserved power to change them. It seems logical to assume that if petitioner had intended, as he now contends, to rescind not only his power to revoke, but the other powers reserved in Section 6 as well, he would have indicated clearly and carefully, rather than to have singled out one of the three powers reserved therein, for express surrender, leaving his intention with reference to the others obscure, to say the least. We have therefore concluded that petitioner retained the power to change the beneficial interest, at least as between the named beneficiaries, and the administrative provisions of the trusts. We can not definitely determine from the evidence whether petitioner's control over the stock in the trusts resulted in economic advantage to him, or that it did not. He transferred to himself as trustee a total of 102 shares of the 183 originally held by him. There were 750 shares issued and outstanding. We are not advised as to the ownership of the remaining shares, so that we can not say petitioner's control over the 102 trust shares was of no economic benefit to him. In , *246 the evidence affirmatively showed there was no possibility of economic benefit to the grantor. To recapitulate, petitioner was himself the sole trustee, with broad powers of management of the trust property, which consisted of stock in a corporation in which he was a stockholder, a director, and a vice-president. The beneficiaries were members of his intimate family group, residing in his own household, his wife and children. He had the power to pay the net income to them at any time, or to accumulate it; he could change the administrative provisions of the trusts at his discretion, and he could at least shift the proportionate interests of the named beneficiaries in the trust funds. We think, under these facts, the petitioner retained so many of the rights and powers with respect to the trust property that he must be held to be taxable on the income under section 22 (a). See ; ; ; . The case of , *247 cited by petitioner, is distinguishable in two important respects: there the trustee was an independent, corporate trustee; and the income was payable at all events to the wife, with no reserved power in the donor to permit or prevent such payment. There was, it is true, a power in the trustee to invade the corpus, in its discretion under certain circumstances. But this power was lodged in the trustee, not reserved to the grantor, so that it is not material to a discussion of the amount of control retained by the grantor. Of the other trust cases mainly relied on by petitioner, each is distinguishable, briefly, as follows: In , there is an independent, corporate trustee, with broad powers of management; in , the grantor-trustee had no discretion concerning the payment or withholding of the income, and no economic advantage could accrue to her by reason of any control she had over the stock. In the Stuart cases, there were three trustees, of whom the grantor was one, and the power to amend the trusts, as well as the discretion with respect to the payment of *248 the income to the beneficiaries, rested in the two trustees other than the grantor. In view of our decision that the trust income is taxable to petitioner under section 22 (a), we need not consider whether section 167, and the doctrine of , are applicable. Decision will be entered for the respondent.